IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CHRISTOPHER ADAM DAUGHTRY,     )
                               )
         Plaintiff,            )
                               )
    v.                         )        1:14-cv-984
                               )
RYAN ANDREWS, SCOTT            )
CRAWFORD, and MARK PERRY,      )
                               )
         Defendants.           )
```

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Christopher Adam Daughtry ("Daughtry") commenced this declaratory judgment action, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to obtain a declaration of copyright ownership in certain musical works based on authorship arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* (ECF. No. 1 at 1, 5–6.) Before the Court is Defendants' Motion to Dismiss or Stay this action pending the outcome of a related state court proceeding. (ECF No. 9.) The Court heard oral argument on April 30, 2015. For the reasons stated below, the Court grants Defendants' Motion to Stay.

I.  **BACKGROUND**

Defendants and Daughtry were members of a band called Absent Element from the fall of 2004 to the summer of 2006.

(ECF No. 16-1 ¶ 12; ECF No. 1 ¶ 7.) During this time, the parties wrote and recorded an album titled *Uprooted*.[1] (*See* ECF No. 1 ¶¶ 7-12.) On April 4, 2006, Defendants filed a copyright registration with respect to the songs on the *Uprooted* album, listing all four members of Absent Element as "co-authors of all lyrics, music and performance on all 7 songs." (*Id.* ¶ 8.) Daughtry denies that he had any knowledge of the copyright registrations, contending that the registrations were fraudulent and that he first learned of them in March of 2012. (*Id.* ¶¶ 8, 15.)

In April of 2012, Defendants filed a lawsuit in state court in Guilford County, North Carolina, alleging among other things that the band, during its existence, operated under a partnership agreement in which all four members had agreed to share equally in the band's profits and songwriting credits for songs written in furtherance of the band, irrespective of authorship.[2] (ECF No. 16-1 ¶¶ 20, 22.) Defendants further claim that Daughtry has failed to account for profits and provide authorship credit as required by the partnership agreement.

---

[1] This album contained seven songs: (1) *Breakdown*, (2) *Conviction*, (3) *Keep Me Close*, (4) *Weaker Side*, (5) *So I Lie Awake*, (6) *Let Me In*, and (7) *Seven 4*. (ECF No. 1 ¶ 7.)

[2] Defendants' state court lawsuit claims ownership in four songs, two of which are on the album *Uprooted*. (ECF No. 16-1 ¶ 33; *see* ECF No. 1 ¶ 7.) Defendants make no claim in connection with the remaining five songs on *Uprooted*.

2

(ECF No. 10 at 5-6.) On May 3, 2012, Daughtry removed the case to federal court, alleging that Defendants' claims arise under the Copyright Act. Notice of Removal ¶ 6, *Andrews v. Daughtry*, No. 1:12-cv-00441, 2013 WL 664564 (M.D.N.C. Feb. 22, 2013) ("*Andrews I*"), ECF No. 1. On February 22, 2013, the Court remanded the case to state court, explaining that Defendants' claims were based on the alleged partnership agreement and that Defendants had "carefully pleaded their claims to avoid federal question jurisdiction" consistent with the well-pleaded complaint rule. *Andrews I*, 2013 WL 664564, at *6, *8, *15.

Before filing his answer and counterclaims in the state proceeding on May 17, 2013, (ECF No. 10-2 at 24), Daughtry filed on or about January 31, 2013, a correction with the Copyright Office, notifying the Office that not all of the band members co-authored each song on *Uprooted*. (ECF No. 1 ¶ 14.) Daughtry also filed a registration with respect to each of the songs on *Uprooted*, outlining what he contends were the correct ownership and authorship interests in each of the songs on the album. (*Id.* ¶ 15.) Daughtry then filed his Answer to the Complaint and Counterclaims Against All Plaintiffs seeking, among other relief, a declaration under the Copyright Act that he was the sole author and original owner of four *Uprooted* songs and a co-owner and co-author of the remaining three. (ECF No. 10-2 at 20 ¶¶ 15-17.) On May 20, 2013, Daughtry once again removed the

3

action to federal court, premising jurisdiction on his counterclaim arising under the Copyright Act. Notice of Removal ¶¶ 1-12, *Andrews v. Daughtry*, 994 F. Supp. 2d 728 (M.D.N.C. 2014) ("*Andrews II*"), ECF No. 1. In January of 2014, the Court for a second time remanded the case to state court, holding that Daughtry's removal was untimely and that he failed to show "good cause" for an extension of time pursuant to 28 U.S.C. § 1454(b)(2). *Andrews II*, 994 F. Supp. 2d at 734-36.

Daughtry initiated this action on November 24, 2014, alleging that the copyright registration filed in 2006 was fraudulent in that it does not reflect the correct ownership interests in the songs on *Uprooted*. (ECF No. 1 ¶¶ 8–12.) Daughtry seeks a declaration, among other things, that he is the sole author and original owner of the copyrights in four *Uprooted* songs and is a co-owner and co-author in the other three *Uprooted* songs. (*Id.* at 5-6 ¶¶ 2-4.)

## II. DISCUSSION

### A. Federal Declaratory Judgment Act

Defendants urge the Court to either dismiss or stay this action pending the outcome of the state court proceeding because they contend only that proceeding encompasses the entire controversy between the parties. They also argue that if they "are correct in their partnership law theories, which are pending in the state lawsuit, then the question of who authored

4

the songs becomes moot." (ECF No. 10 at 13, 16.) Daughtry counters by arguing that the Court should deny Defendants' request for dismissal or stay because this Court has exclusive jurisdiction over his "narrowly tailored" claims such that "[n]one of the relief he seeks implicates any of the relief that Defendants are seeking in state court."[3] (ECF No. 15 at 6-8.) Daughtry further argues that if the Court dismisses this action as urged by Defendants, it would effectively deny him any forum to have his claims heard.[4]

The Federal Declaratory Judgment Act allows federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2012). The court's power to grant declaratory relief is discretionary and should be invoked for appropriate cases only. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256-57 (4th Cir. 1996). A court may exercise jurisdiction in a federal declaratory

---

[3] Daughtry admits that his copyright claim asserted in this action was also asserted by him as a counterclaim in the state action. (ECF No. 15 at 6.) Daughtry explains that when the Court remanded on the second occasion, he had no choice but to assert his counterclaim arising under the Copyright Act in state court because of the uncertainties surrounding (1) the 2011 enactment of the America Invents Act and (2) whether his claim qualified as compulsory counterclaim under North Carolina law. (*Id.*)

[4] According to Daughtry, the statute of limitations for him to challenge the alleged fraudulent copyright registrations ran in March of 2015. (ECF No. 15 at 7).

5

judgment proceeding when (1) the complaint shows that there is an actual controversy between the parties, (2) the claim arises under federal law, and (3) the exercise of jurisdiction is not an abuse of discretion. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004).

Neither party has raised any issues related to the first two requirements necessary for this Court to exercise jurisdiction in this declaratory judgment proceeding. Thus, the issue to be decided here is whether the exercise of jurisdiction by this Court, in light of the pending related state court proceeding and the unique procedural posture of the parties' claims, would amount to an abuse of discretion.

It is well settled that district courts enjoy broad discretion in determining whether to entertain a declaratory judgment action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). While such discretion is not limitless, "a district court's discretion 'is especially crucial when . . . [a] related proceeding is pending in state court.'" *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 401 (2010) (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005)). Within the declaratory judgment context, the United States Supreme Court has explained that "the normal principle that federal courts should adjudicate claims

6

within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288; *see also Brillhart*, 316 U.S. at 494 ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction."). The Supreme Court in *Brillhart* stated that it is "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. The court must therefore determine whether the controversy "can better be settled in the proceeding pending in the state court." *Wilton,* 515 U.S. at 282. This requires the court to take into account "considerations of federalism, efficiency, and comity." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998).

To assist district courts with balancing the federal and state principles articulated by *Brillhart* and *Wilton*, the Fourth Circuit has set forth four factors that the court should consider:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal

7

courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff*, 155 F.3d at 493–94 ("Kapiloff factors"). Courts are not to "treat the factors as a 'mechanical checklist,' but rather should apply them flexibly in light of the particular circumstances of each case." *VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013).

**B. Kapiloff Factors**

Analysis of the Kapiloff factors leads this Court to conclude that this action should be stayed pending resolution of the state court trial proceeding.[5]

1. <u>The State's Interest</u>

It is undisputed that North Carolina has a strong interest in resolving the dispute concerning the alleged partnership

---

[5] Daughtry argues that the presence of a federal claim and the lack of a parallel state proceeding compel the Court to entertain his claims brought under the Federal Declaratory Judgment Act. (*See* ECF No. 15 at 20.) "[E]ven in cases involving federal law, '[t]he Declaratory Judgment Act [i]s an authorization, not a command. It g[ives] the federal courts competence to make a declaration of rights; it d[oes] not impose a duty to do so.'" *Riley*, 371 F. App'x at 405 (alterations, except first, in original) (quoting *Pub. Affairs Assocs., Inc., v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam)). Moreover, "[t]here is no requirement that a parallel proceeding be pending in state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998). Although the existence of a parallel state action is "a significant factor in the district court's determination[,] . . . it is not dispositive." *Id.* The Kapiloff factors continue to be the criteria the Court should balance in determining whether to entertain a federal declaratory action. *See id.* at 423-24; *see also Riley*, 371 F. App'x at 405-06.

agreement. Who owns the present interest in the songs at issue turns on whether they are assets of the alleged partnership agreement, a disputed issue in the state court proceeding that implicates North Carolina partnership law. The Chief Justice of the North Carolina Supreme Court has designated the state case as an "exceptional" civil case under Rule 2.1 of the North Carolina General Rules of Practice for the Superior and District Courts. (ECF No. 10 at 4.) To qualify as an "exceptional civil case," the Chief Justice considers a number of factors, which include, among other things, the diverse interests of the parties, the amount and nature of pretrial discovery, and the complexity of legal issues involved. N.C. R. Super. & Dist. Cts. 2.1(d). Had Daughtry's complaint in this federal declaratory judgment action requested relief that can only be provided through application of the Copyright Act, then the state would likely have no interest in this action. However, because certain relief sought by Daughtry in this action could overlap with resolution of the partnership issue,[6] which is a state law matter, North Carolina has a strong interest in having

---

[6] (*See* ECF No. 1 ¶ 20 ("Plaintiff brings this claim for a judgment declaring that Defendants . . . do not hold equal undivided interests in the copyright and publishing rights to . . . *Breakdown,* [and] *Conviction . . . .*").) At the hearing, Daughtry's counsel represented to the Court that Daughtry did not intend to plead relief that would conflict with a ruling in the state court action, but he has not amended his Complaint to reflect his stated intention.

9

its courts first resolve these complex issues of North Carolina law.

   2. Efficiency

   As a general rule, the first suit filed should have priority over a later filed suit. *Riley*, 371 F. App'x at 403. Here, the state court proceeding was filed first. In addition, in the state proceeding, the parties have completed nine months of fact discovery, which included eleven depositions and extensive written discovery. (ECF No. 10 at 4.) A mediation, though unsuccessful, was held on January 7, 2015, which was followed by briefing and a hearing on Daughtry's motion for summary judgment on March 11, 2015. (*Id.*) Trial is set for September 14, 2015. (*Id.*)

   Defendants claim that if the Court exercised jurisdiction over Daughtry's complaint for a declaratory judgment, then it would lead to a piecemeal resolution of this case. (*Id.* at 14.) The Court does not find this argument compelling under the circumstances of this case. Although Daughtry's copyright claims are pending in the state court proceeding, a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question under the Copyright Act that Congress has expressly stated cannot be resolved by a state court. *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising

10

under any Act of Congress relating to . . . copyrights."); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 510 F.3d 77, 86 (1st Cir. 2007) ("[T]he federal circuit courts of appeal . . . agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act."). Defendants have advanced the argument that if their theory of the partnership agreement prevails in the state proceeding, then the question of authorship is moot. Interestingly, they are silent on what happens if they are unsuccessful. If the state court concludes that there is no partnership agreement that governs the present ownership of the disputed songs, then it would appear that resolution of ownership of the songs based on authorship, including present ownership, will be determined pursuant to the Copyright Act and, therefore, in this Court. Consequently, a stay pending resolution of the state court proceeding could prevent needless duplication of effort and minimize the unnecessary expenditure of judicial resources while at the same time preserving a federal forum for Daughtry's claims. *See Centennial Life Ins. Co.*, 88 F.3d at 258. Thus, the stay allows for an orderly resolution of the entire controversy.

3. <u>Entanglement</u>

Requiring simultaneous litigation in state and federal court often invites unnecessary entanglement. Here, both the state proceeding and this declaratory judgment proceeding include the same parties as well as common issues of law and fact. In addition, it is uncertain what impact the alleged partnership agreement will have on any relief Daughtry is entitled to receive in this action, assuming that the state court finds that such an agreement exists, is valid, and is enforceable. Daughtry contends that there is no risk of entanglement because his original ownership claims based on authorship have no bearing on the issues pending in state court, specifically the state issue of whether or not there is a partnership agreement. Even though the Court has exclusive jurisdiction over original ownership claims based on authorship pursuant to the Copyright Act, the similarity of issues between the same parties in both proceedings increases the risk of inconsistent rulings should this Court and the state court proceed simultaneously, "thereby frustrat[ing] the orderly progress of the [] proceedings." *Riley*, 371 F. App'x at 403 (alterations in original) (internal quotation mark omitted).

4. <u>Procedural Fencing</u>

Defendants claim that this action "appears to be an end run around the Court's two remand decisions" in *Andrews I* and

12

*Andrews II*.  (ECF No. 10 at 16-17.)  While this Court does not take lightly the fact that Daughtry has unsuccessfully sought removal to federal court twice, this Court cannot conclude that Daughtry is engaging in "mere" procedural fencing by filing this federal action, as Defendants argue.  "Procedural fencing occurs when . . . 'a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum'" or when a party files suit directly in federal court to secure a federal forum in a case that is otherwise not removable.  *Riley*, 371 F. App'x at 403-04 (quoting *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006)).  While procedural fencing generally contemplates a litigant shopping for a more favorable forum, it appears that Daughtry seeks to ensure that he is not foreclosed from having his claims heard in any forum.

Defendants maintain, however, that the Court in *Andrews II* rejected Daughtry's argument that his copyright claims can only be heard in federal court, contending that the Court observed "that if Congress had in fact intended there to be exclusive federal jurisdiction over a counterclaim for copyright ownership, Congress would not have imposed the ordinary time limits applicable to removal."  (ECF No. 10 at 18.)  The Court in *Andrews II* made no such observation.  Nor does it cite *University of Kentucky Research Foundation, Inc. v. Niadyne*

13

*Inc.*, No. 13-16-GFVT, 2013 WL 5943921, (E.D. Ky. Nov. 5, 2013), for such observation. The actual language in *Andrews II* to which Defendants refer is as follows:

> Daughtry urges the court to find *cause* for removal on the ground that the federal courts are the *exclusive forum* for his *copyright claims*. But, as noted by the *Niadyne* court, if Congress shared *that view*, "it would have simply removed all time limitations" in section 1454. It did not.

*Andrews II*, 994 F. Supp. 2d at 735-36 (emphasis added) (citations omitted) (quoting *Niadyne*, 2013 WL 5943921, at *10). The Court made that statement as it was rejecting Daughtry's argument that the "cause" standard set forth in 28 U.S.C. § 1454 could be satisfied based on an argument that federal courts are the exclusive forum for claims arising under the Copyright Act. The Court did not rule, as Defendants proclaim, that the state court had jurisdiction over Daughtry's copyright claims under the Copyright Act. Defendants' expansive reading of *Andrews II* must be rejected by this Court.

Moreover, Daughtry offers a reason for filing this federal suit after the Court's second remand decision—that is, the statute of limitations for him to challenge the alleged fraudulent copyright registrations ran in March of 2015, (ECF No. 15 at 7), and that he would be precluded from having his copyright issues heard, (*id.* at 19). The Court finds Daughtry's explanation reasonable. Accordingly, in light of Daughtry's

14

concern about the statute of limitations and his well-founded belief that the state court will likely be unable to resolve his copyright counterclaim, the Court cannot say that this action represents procedural fencing on the part of Daughtry.

However, if for the sake of argument, there is procedural fencing by Daughtry in attempting to secure a federal forum on a case that is not removable, its effect is minimized by a stay of this action pending resolution of the state court proceeding.

For the reasons outlined above, the Kapiloff factors weigh in favor of staying this action pending the outcome of the state trial court proceeding.[7]  This result is consistent with the Court's inherent power to stay proceedings to "maintain an even balance" between the parties, *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936), and to control the progress of a case in the interest of justice, *Carlisle v. United States.*, 517 U.S. 416, 438 n.1 (1996) (quoting *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 381–82 (1935)).

---

[7] The Court also rejects Daughtry's argument that this Court cannot stay or dismiss this action under the *Colorado River Doctrine*. (*See* ECF No. 15 at 20.)  In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court held that a federal court may abstain from hearing non-declaratory claims in favor of a parallel suit under certain circumstances. *See id.* at 814-17. However, this doctrine is inapplicable to cases seeking only declaratory relief under the Federal Declaratory Judgment Act. *See VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015).

15

**ORDER**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or Stay (ECF No. 9) is GRANTED IN PART AND DENIED IN PART, in that Defendants' Motion to Dismiss is DENIED and this action is STAYED pending the resolution of the state trial court proceeding. The parties shall provide the Court with a joint status report every 120 days following entry of this Memorandum Opinion and Order.

This, the 2nd day of July, 2015.

                                        /s/ Loretta C. Biggs
                                    United States District Judge